IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CAROLINA RUTH BARNARD )
)
v. ) No. 3:12-0298
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 7), to which defendant has responded (Docket Entry No. 8). Further briefing from the parties has also been considered. (Docket Entry Nos. 9-1, 12-1, 15) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 5),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed her application for disability insurance benefits on September

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

30, 2008, alleging a disability onset of November 2, 2006. (Tr. 13, 114) Plaintiff alleges disability based upon manic depression, posttraumatic stress disorder (PTSD), and asthma, claiming she is afraid to leave her home. (Tr. 128) Plaintiff's application was denied at the initial and reconsideration stages of review before the state agency, whereupon plaintiff requested de novo hearing of her claim by an Administrative Law Judge (ALJ).

The ALJ hearing was held on September 22, 2010, and plaintiff appeared with counsel and gave testimony. Testimony was also received from a vocational expert retained by the government. (Tr. 27-48) At the conclusion of the hearing, the ALJ took the case under advisement until October 18, 2010, when he issued a written decision finding plaintiff not disabled. (Tr. 13-21) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since November 2, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar spine degenerative disc disease; asthma; chronic obstructive pulmonary disease; obesity; bipolar disorder, anxiety disorder; and posttraumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours out of 8 hours; sit 6 hours out of 8 hours; frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders/ropes/scaffolds; and avoid pulmonary irritants and hazards (machinery, heights, etc.). She is able to remember and carry out

simple one and two step and detailed instructions; able to concentrate and persist with one and two step tasks; should have infrequent contact with co-workers; able to relate adequately to co-workers and supervisors with acceptable behavior; should have no interaction with the general public; and able to adapt to infrequent change and short-term goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 6, 1973 and was 33 years old, which is defined as a younger individual, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited (9th grade) education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a "disability" as defined in the Social Security Act from November 2, 2006, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-17, 20-21)

On January 26, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from defendant's brief, Docket Entry No. 8 at pp. 4-7:

Age, Education, and Work Experience

Plaintiff, born in September 1973, was 33 years of age at the time of her alleged onset of disability on November 2, 2006 (Tr. 114), and would be classified as a "younger person" under the disability regulations. 20 C.F.R. § 404.1563. She had a ninth grade formal education and did not attend any special education classes (Tr. 135).

Her past relevant work consisted of being a waitress, construction laborer, secretary for an electric company, gas station cashier, seamstress, restaurant cashier, and assistant restaurant manager (Tr. 39-40, 129, 137, 165). Plaintiff reported that all her past jobs, except that of secretary and seamstress, required medium to heavy exertion (Tr. 137-144, 165). She stopped being a secretary because the company moved to another location (Tr. 44).

Plaintiff testified she last worked for McDonald's as a cashier (Tr. 32). She disclosed in a disability report that she stopped working because she "couldn't face the public anymore" (Tr. 128). Specifically, she testified at the administrative hearing that she "had a panic attack when a gentleman came in who looked like a guy who raped me when I was younger" (Tr. 33). She further testified that she had never had a panic attack before that. Id. She stated she had no symptoms before she stopped working (Tr. 34).

Additional Evidence

Plaintiff further testified that after her panic attack at McDonald's, her husband took her to Northcrest Hospital, when she was admitted for ten days under the care of Dr. Hartman (Tr. 33). She further testified that she daily deals with multiple panic attacks caused

by anxiety, depression, and PTSD. Id. She further testified that she "can no longer leave my home other than to go to the doctor." Id. She alleged that she has not gone shopping for "six months or more" or driven a car for a year (Tr. 34). She claimed that she no longer associates with people other than her husband and two children, ages 17 and 4 (Tr. 35-36).

Plaintiff further testified that she was "hospitalized multiple times a year for pneumonia" because of her asthma and chronic obstructive pulmonary disease (COPD)(Tr. 37). She also has migraine headaches "every few months" (Tr. 38). Due to asthma, plaintiff testified that her physician, Dr. John Taylor, prescribed a portable oxygen device which she wears "twenty-four hours a day, seven days a week" (Tr. 42). She testified that she had no issues with prescribed medications (Tr. 31).

As for daily activities, plaintiff testified that by the time she is done cooking dinner she has "excruciating" back pain (Tr. 40-41). Therefore, her husband prepares the meals and she cooks only once a month (Tr. 41). She testified that her "husband does all the cooking, cleaning, taking care of the children, PTA meetings, everything." Id.

Yet, in an adult function report completed before the administrative hearing, plaintiff related that she wakes up and showers and then "makes my daughter breakfast," takes something from the freezer for dinner, then cleans house, makes her daughter lunch, and plays with her (Tr. 168). When her son comes home from school, she makes supper. Id.

Vocational Expert Testimony

Dr. Gordon Doss testified as a VE at the hearing (Tr. 43-47). The VE described plaintiff's past relevant work as a fast food worker and gas station cashier as light and unskilled (Tr. 43). The VE described plaintiff's past work as a waitress as light and semiskilled with no transferable skills. Id. Her past work as a laborer was described as very

5

heavy and unskilled. Id. Her past work as a secretary was sedentary and skilled (Tr. 44).

In accordance with the established RFC, the ALJ asked the VE to assume a hypothetical person of plaintiff's age, education, and work experience, who can perform a wide range of medium work, including an ability to lift 50 pounds occasionally and 25 pounds frequently, an ability to stand/walk 6 hours and to sit 6 hours in an 8-hour day, and an ability to understand, remember and carry out simple one and two step and detailed instructions, and to concentrate and persist with one and two step tasks (Tr. 45). This hypothetical person should also have infrequent contact with coworkers and no interaction with the general public. Id.

The VE testified that such a hypothetical person would not be able to do plaintiff's past relevant work (Tr. 46). However, such an individual would be able to perform certain light unskilled jobs such as house sitter (28,000 jobs nationwide) and surveillance systems monitor (33,500 nationwide). Id.

The VE testified no work would be available if the hypothetical person were further restricted to being unable to make judgments on simple work related decisions, unable to adapt to change, and needed unpredicted breaks to rest for 10 to 15 minutes (Tr. 46-47).

In addition to the above history recited in defendant's brief, plaintiff's mental illness background, which underlies all arguments asserted in this appeal, is given as follows in the Clinical Intake Assessment performed on December 19, 2007, at Centerstone Mental Health ("Centerstone"):

> Cl reports depressive sx that have been present for approx 10-15 years and
> have increased in the past 6-8 weeks and include low energy and motivation,
> crying spells, difficulty concentrating, trouble falling asleep due to racing

> thoughts and then not wanting to get out of bed, mood swings, sadness. Cl also reports anxiety attacks that occur when she goes around 4+ people if she doesn't know them and include shortness of breath, feeling overwhelmed and panicky. Cl has difficulty managing her anger and reports excessive rage.
>
> Cl was "almost killed" by her bio-father at age 5 on Christmas Eve when he beat her with a hammer. Cl was raped for 2 weeks in 1983 by a family friend; Cl was 10 years old at this time. Cl battled a cocaine addiction during her late teens/early 20's and then became clean when she met her current husband. Cl was physically abusive toward her husband for the first 6-8 years of their marriage, but denies any abuse in the past 6 years. Cl has allowed her mother, 2 brothers, 1 sister-in-law and 3 nieces/nephews to move into her own house and this is adding stress to her life.

(Tr. 623)

Plaintiff received her mental health care during all relevant times at Centerstone, primarily being treated by psychiatrist Dr. Bert Hartman. (Tr. 535-715, 1094-1121) Dr. Hartman's treatment notes generally reflect plaintiff's efforts to maintain good control of her symptoms with frequent adjustment of the dosage and brands of anti-depressant and anxiolytic medications, which efforts were largely successful. The Centerstone records also include periodic assessments of plaintiff's condition on Clinically Related Group forms, executed by "raters" who are not identified by name. (Tr. 536-44, 1115-17)

On March 23, 2009, plaintiff's records were reviewed by Dr. Karen B. Lawrence, Ph.D., who opined that plaintiff was moderately limited by her mental impairments, such that she can understand, remember and carry out simple one- and two-step, detailed, but not complex instructions; can relate adequately to co-workers and supervisors, despite some difficulty, while maintaining acceptable behavior; can not work with the general public; and, can adapt to gradual, infrequent changes and set short term

goals. (Tr. 373-90)

One week later, on March 31, 2009, plaintiff was seen at Centerstone by Dr. Hartman, who produced the following treatment note:

> Went to mobile crisis and was [discharged] without med changes. Cymbalta not effective for depression. Has been off it since Friday. Also reports being out of xanax. Anxiety and depression worse. Discussed medication options given historical poor response to AD. Risks/benefits and she chooses trial of lamictal. Continue xanax, 1 week written. [Followup] next week. Disability paperwork completed with patient input and agreement.

(Tr. 570) On that same day, Dr. Hartman produced a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)," in which he opined that plaintiff was markedly limited by her mental impairments, such that she could not effectively function outside the home. (Tr. 391-93)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc.

Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinion of her treating psychiatrist, Dr. Bert Hartman, who opined that she had severe limitation in her ability to function in the workplace. (Tr. 391-93) The ALJ gave the following treatment to the opinion of Dr. Hartman:

Dr. Bert Hartman, the claimant's psychiatrist, completed a medical source statement on March 31, 2009. He assessed the claimant was moderately limited (limited but still able to function satisfactorily) in the ability to understand, remember, and carry out short, simple instructions and markedly limited (severely limited but not precluded) in the ability to understand, remember, and carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. Exhibit 9F.

This assessment of Dr. Hartman is not supported by the treatment records. The claimant was obtaining mental health treatment at Centerstone at or around the same time of Dr. Hartman's assessment. The CRG report of January 2009 listed her having mild limitations for interpersonal function and moderate limitations for daily living and her concentration persistence and pace with a GAF rating of 50. Exhibit 14F. The claimant improved with medication in September 2009 to the point where she had no mental symptoms. As part of Exhibit 26F, the claimant's CRG report of January 29, 2010 listed her with a GAF rating of 60, with mild limitations of daily living and moderate limitations with interpersonal functioning, concentration, persistence and pace and adapting to change. The March 2010 treatment note indicates that she has been non-compliant with her treatment. Any lapse in mental function can be attributed to this non-compliance. These treatment records fail to support the medical source statement of Dr. Hartman.

It is common for treating doctors to provide assessments that are most favorable to the claimant in a good-intentioned attempt to assist the claimant with obtaining disability benefits. Nevertheless, such assessments must be supported by the underlying treatment notes and records in order to be credited with probative weight. In this case, little weight is given to Dr. Hartman's medical source statement. It simply is not supported by the claimant's overall treatment history. More weight is given to [non-examining consultant] Dr. Lawrence's opinion inasmuch as it is [a] more consistent assessment of the claimant in relation to ... the treatment records and notes.

(Tr. 18-19)

The medical opinion of a treating source is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Rogers, 486 F.3d at 242.

In this case, the ALJ's reason for discounting the weight of Dr. Hartman's medical source statement (MSS) was that the limitations assessed therein were inconsistent with the limitations recorded in the treatment notes of Dr. Hartman and other providers at Centerstone, including the limitations assessed in the Clinically Related Group (CRG) forms which marked plaintiff's progress at intervals during her treatment there. Noting that the CRG assessments indicated that plaintiff was, at worst, moderately limited by her mental illness, the ALJ found little support for Dr. Hartman's subsequent assessment of marked limitations of function in most domains. Plaintiff argues that the purported inconsistency between the "marked" limitations assessed in Dr. Hartman's MSS and the "moderate" limitations assessed in the CRG forms is considerably lessened by the differences in how those terms are defined in the two instruments. However, the "moderate" rating is the middle rating of a five-point scale on both instruments, and under either instrument's description of its moderate range of functionality in the domains of interpersonal functioning

and adaptation to change,[2] the ALJ's finding that plaintiff would need to have infrequent contact with co-workers, no interaction with the general public, and would be able to adapt to only infrequent change would allow for such limitation.

At the heart of the ALJ's rejection of Dr. Hartman's March 31, 2009 opinion of marked limitations is its inconsistency with the Centerstone treatment notes, which were found to be more reflective of the moderate functional limitation assessed in the CRG forms, and more consistent with the degree of functionality assessed by Dr. Lawrence, a nonexamining consultant. Dr. Lawrence rendered her opinion on March 23, 2009, and as plaintiff notes, that opinion supports the existence of significant mental limitations. However, as noted in Dr. Lawrence's opinion, the Centerstone treatment notes to date reflected an individual whose symptoms, albeit severe, are not as restrictive as plaintiff alleged them to be. Significantly, while those treatment notes support the existence of residual symptoms which routinely required adjustment of her medications, they depict plaintiff as maintaining symptom control or even improving, up until March 10, 2009, the last office visit before Dr. Lawrence conducted her review. (Tr. 570-73, 576-79, 581-84, 589-94) However, on March 31, 2009, the day of plaintiff's next visit to Centerstone and the date of Dr. Hartman's MSS, his note of treatment states that plaintiff had recently been off of, or

---

[2]The MSS defines its moderate rating in the various domains as follows: "There is moderate limitation in this area but the individual is still able to function satisfactorily." (Tr. 391) The CRG forms define their moderate rating in the domain of interpersonal functioning as "[l]imited integration in the community; little or no use of natural supports and/or marginal capacity to take part in a variety of social activities or manage self in relationship to others and/or demonstrates aggressive episodes with limited ability to self manage behavior." (Tr. 545) The CRG forms define their moderate rating in the domain of adaptation to change as "[r]egular or frequent difficulty in accepting and adjusting to change; adaptation will require some intervention." (Tr. 546)

out of, her medications (Cymbalta for depression and Xanax for anxiety) and thus her anxiety and depression were worse, and that she had been to mobile crisis. (Tr. 570) Dr. Hartman ordered a trial of lamictal and continuation of Xanax, with followup in one week, and noted that "[d]isability paperwork [was] completed with patient input and agreement."[3] Id. Thereafter, it is fair to say that the Centerstone notes of treatment (Tr. 556-68, 1118-21) reflect a period of improvement in plaintiff's symptoms -- to the point that she was noted as not reporting any recent symptoms of active depression or PTSD in September 2009 (Tr. 548) -- before those symptoms again became more prominent in May 2010, requiring adjustment to plaintiff's medications. (Tr. 1094-1101) In view of the disparity between plaintiff's presentation on the day that Dr. Hartman's MSS was rendered, and the balance of the Centerstone treatment notes evincing varying degrees of success in medically controlling her symptoms of depression and anxiety/agoraphobia, the undersigned finds substantial evidence and good reason for the ALJ's decision to discount Dr. Hartman's opinion insofar as it imposes more work-related limitations than found by the ALJ.

Finally, while plaintiff argues that her providers repeatedly assessed her GAF score as 50, indicating serious symptoms, under the law of this circuit, the GAF scores assessed in the Centerstone CRG forms and in the notes of plaintiff's regular treatment there are of no particular value in the decisionmaking process where they conflict with the more particularized assessments of functional limitation that are contained in the treatment

---

[3]While the ALJ did not explicitly tie this treatment note, confirming that Dr. Hartman's MSS was completed with plaintiff's "input and agreement" on a day when her symptoms were exacerbated by her failure to take prescribed medication, to his subsequent remark (described by plaintiff as "anecdoted") that "[i]t is common for treating doctors to provide assessments that are most favorable to the claimant in a good-intentioned attempt to assist the claimant with obtaining disability benefits" (Tr. 19), the undersigned finds the connection readily apparent.

records. A GAF score is largely superficial, representing "a clinician's subjective rating of an individual's overall psychological functioning" in terms "understandable by a lay person"; it is not raw medical data. Kennedy v. Astrue, 247 Fed.Appx. 761, 766 (6th Cir. Sept. 7, 2007) (citing Kornecky v. Comm'r of Soc. Sec., 167 Fed.Appx. 496, 511 (6th Cir. Feb. 9, 2006); see also, e.g., Smith v. Astrue, 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008). The GAF scores in this case were appropriately considered as part of the larger picture of plaintiff's degree of mental impairment, revealed by the record of her treatment at Centerstone. In fact, the scores of 50 which plaintiff argues to have been "based on a treating relationship" were assigned by other staff at Centerstone, not by Dr. Hartman. Of the fifteen occasions from January 2009 to August 2010 where Dr. Hartman's treatment notes contain a GAF assessment, all save one (Tr. 589-94) assign a current GAF of 60. (Tr. 556-59, 560, 565-68, 570-73, 576-79, 581-84, 1094-95, 1096-97, 1098-99, 1100-01, 1103, 1110, 1118-19) The undersigned finds no error in the ALJ's consideration of the GAF scores in this matter.

In short, while plaintiff in various ways argues that the ALJ erred in failing to appreciate or appropriately weigh the severity of her psychological impairments as revealed in the Centerstone notes of treatment by Dr. Hartman and other sources, the undersigned finds no such error. Substantial evidence supports the ALJ's findings concerning the weight of the medical evidence here.

Plaintiff secondarily argues that the ALJ erred in failing to properly evaluate the credibility of her subjective complaints of debilitating symptoms. However, combined with his substantially supported resolution of the conflict between Dr. Hartman's MSS (which explicitly aligned with plaintiff's view of her own limitations, Tr. 570) and the

15

medical evidence underlying it, the ALJ further found plaintiff's credibility damaged by her overly dramatic and exaggerated presentation at the hearing, as well as the following anecdote from an emergency room report:

> [T]he hospital records relating to her treatment after a minor motor vehicle accident demonstrate this tendency. The records indicate that she was overly dramatic in expressing her pain at the hospital after she was able to walk home with her brother from the accident. Her over-reaction at the hospital was not consistent with her brother's representations of her potential injuries prior to and during the visit.

(Tr. 19) Nonetheless, the ALJ recognized the clear, substantial limitations resulting from her mental impairments, as embodied in his RFC finding. An ALJ's credibility determination is due considerable deference on judicial review, particularly since the ALJ, unlike the Court, has the opportunity to observe the plaintiff while testifying. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The undersigned finds substantial evidence supporting that determination in this case.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections

within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

    **ENTERED** this 18th day of December, 2013.

                                                       s/ John S. Bryant  
                                                      JOHN S. BRYANT  
                                                      UNITED STATES MAGISTRATE JUDGE